UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBERT JACOBS,

                Plaintiff,

v.                                       Case No. 5:05-cv-235-Oc-10GRJ

JO ANNE B. BARNHART, Commissioner of
Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income, a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 8) and both parties have filed briefs outlining their respective positions. (Docs. 13 & 15.) For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits (R. 54-60) and an application for supplemental security income (R. 154-59) claiming a disability onset date of May 10, 2002. Plaintiff's applications were denied initially (R. 41-43), and upon reconsideration. (R. 37-38, 163-65.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

requested a hearing before an Administrative Law Judge ("ALJ"). (R. 36.) ALJ John D. Henson conducted Plaintiff's administrative hearing on June 23, 2004. (R. 172-86.) Plaintiff was without legal counsel at the hearing. (R. 174-75.) The ALJ issued a decision unfavorable to Plaintiff on September 10, 2004. (R. 13-23.) The Appeals Council denied Plaintiff's request for review on March 17, 2005. (R. 5-9.) On May 16, 2005, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the

---

[2] *See* 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from
(continued...)

district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[5](...continued)
evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on December 13, 1958 and was 45 years old at the time of the hearing. (R. 177.) Plaintiff completed eleventh grade and attended trade school for four years in the electrical trade. (R. 177-78.) Plaintiff worked as an electrician until May 2002, when he contends that he was no longer able to work due to lower back pain and diabetes. (R. 81, 180-83.)

---

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

[20] Wolfe at 1077-78.

[21] *See id.*

[22] *See* Doughty at 1278 n.2.

An MRI of the lumbar spine on April 18, 2002 showed loss of disc height and hydration with disc bulge at L4-L5 and grade I posterolisthesis with disc bulge and spondylosis effacing the ventral epidural fat at L5-S1.  (R. 104.)

Plaintiff was seen by Michael R. Piazza, M.D., an orthopaedist, on May 9, 2002. (R. 112-21.)[23]  Plaintiff reported a one to two-year history of lower back pain and described diffuse tenderness throughout the thoracic and thoracolumbar area, with the most severe symptoms in the lower lumbar region and some radiation into his buttocks. Plaintiff reported that he was recently diagnosed with diabetes and described symptoms in his legs consistent with early diabetic neuropathy.  Dr. Piazza reviewed the April 18, 2002 MRI and opined that Plaintiff has "very mild degenerative disc and joint disease with a component of congenital stenosis" and "no significant central or lateral recess stenosis or disc protrusion."  On examination, Dr. Piazza noted that Plaintiff's range of lumbar motion was 6 inches from toe touch while extension was normal; straight leg raising and sitting root test was negative bilaterally; all motor tests resulted in a 5/5; all sensory tests were normal bilaterally; and all pathologic reflexes were normal bilaterally. Dr. Piazza recommended physical therapy and prescribed an anti-inflammatory. Plaintiff returned to Dr. Piazza on June 6, 2002 complaining of pain in the lower lumbar region.  (R. 111.)  Dr. Piazza ordered a bone scan and noted that rehab and therapy were Plaintiff's best long-term options of care.

Fernando Vale, M.D., a neurologist, examined Plaintiff on June 5, 2002. (R. 131-32.)  Plaintiff reported progressive back pain over the past year that was limiting his

---

[23] In his opinion, the ALJ incorrectly stated that Plaintiff saw Dr. Sam Diasti, and not Dr. Piazza.

activities of daily living.  The pain was constant and felt like pressure in the low back area and worsened with prolonged sitting and standing.  On examination, Dr. Vale noted that Plaintiff had paraspinal muscle group soreness bilaterally but no point tenderness and 20 degrees of limitation of range of motion on flexion.  He further noted good peripheral pulses in the extremities and straight leg raising and Tinel's sign were both negative.  Dr. Vale noted that the MRI of the lumbar spine demonstrated minimal lumbar spondylosis with degenerative disc disease probably more pronounced at the level of L3-L4, L4-L5, and L5-S1 and no evidence of lumbar instability or stenosis.  Dr. Vale opined that Plaintiff's low back pain was probably due to musculoskeletal injury and that there was no need for any surgical intervention.  Dr. Vale gave Plaintiff samples of Celebrex and Zanaflex and recommended physical therapy.

Plaintiff returned to Dr. Piazza on June 24, 2002. (R. 110.)  Dr. Piazza noted that the bone scan revealed no significant uptake in the lower back region.  He advised Plaintiff to proceed with aggressive home exercises for his lower back taught to him by physical therapy.

An MRI of the lumbar spine on June 28, 2002 (R. 102-03) showed S-type scoliosis convex towards the left in the thoracolumbar junction and convex towards the right in the middle of the lower lumbar region.  It further showed L4-L5 disc bulge and spondylosis effacing the ventral epidural fat and, in combination with hypertrophy of the facets, narrowing the bilateral lateral recesses and producing stenosis of the medial aspects of the bilateral neural foramina and significant facet arthropathy.  Additionally, at L5-S1 there was Grade I posterolisthesis with disc bulge and spondylosis incompletely effacing the ventral epidural fat and, in combination with hypertrophy of the


facets, narrowing the bilateral lateral recesses and producing stenosis of the media aspects of the bilateral neural foramina. Significant facet arthropathy was also noted.

Plaintiff returned to Dr. Vale on July 11, 2002 complaining of back pain. (R. 129-30.) On examination, Dr. Vale noted that Plaintiff's motor examination was symmetric throughout, sensory was normal to pinprick, and reflexes were equal throughout all four extremities. Plaintiff's gait was steady and he was able to walk on heels and toes without difficulty. Plaintiff had paraspinal muscle group soreness bilaterally and mildly limited range of motion of about 20 degrees. Dr. Vale assessed low back pain secondary to degenerative spine disease and prescribed nonsteroidal anti-inflammatory medications and a muscle relaxant and referred Plaintiff for a round of physical therapy.

Plaintiff was seen again by Dr. Vale on August 21, 2002. (R. 125-26.) Plaintiff complained of muscle spasms, mildly limited range of motion, and tingling and burning sensation in both legs. Plaintiff also reported a history of diabetes mellitus. Dr. Vale noted that Plaintiff's gait was normal, good peripheral pulses in the extremities, no edema and negative straight leg raising and negative Tinel's sign. Low back examination revealed mild paraspinal muscle group soreness, no midline tenderness and mildly limited range of motion (about 10 degrees on flexion). Based on his review of the most recent MRI, Dr. Vale noted that Plaintiff had minimal lumbosacral spondylosis, no nerve root compression and no spinal stenosis. Dr. Vale assessed low back pain and based on the MRI concluded that Plaintiff was nonsurgical. Dr. Vale noted that if Plaintiff's bone scan was negative, his only recommendation would be facet blocks and conservative medical therapy.

Plaintiff was seen by T. Pipalia, M.D. on September 9, 2002. (R. 134-35.) Plaintiff complained of uncontrolled diabetes and tingling and numbness in both legs and burning pain and back pain that radiates to the legs. On examination, sensation was decreased peripherally and Plaintiff showed no local tenderness or paraspinal muscle spasm and his straight leg tet was negative. Dr. Pipalia's impression was diabetes mellitus with possible peripheral neuropathy, chronic backache with probable radiculopathy, hypertension and hyperlipidemia.

There are two physical residual functional capacity ("RFC") assessments of record which was performed by non-examining state agency physicians. (R. 138-53.) Nicholas H. Bancks, MD., performed an assessment and found that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; stand and walk for about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday; and push and pull without limitation. (R. 139.) Bancks further found that Plaintiff should never climb ladders, ropes and scaffolds, should only occasionally balance, stoop and crouch, and should avoid concentrated exposure to hazards. (R. 140-42.) Henry L. Collins, M.D., also performed an assessment and found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand and walk for about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday; and push and pull without limitation. (R. 147.) Collins further found that Plaintiff should only occasionally stoop and crouch and should avoid concentrated exposure to hazards. (R. 148-50.)

At the hearing, Plaintiff testified that he was diagnosed with diabetes in February 2002 but that he is not taking any medication for his diabetes due to lack of funds. (R. 181-82.) He further testified that he is still having problems with lower back pain. (R.

183.) Plaintiff testified that he could probably walk a block or two, sit for about an hour and pick up twenty pounds if he does not bend his back. (R. 183-84.) Plaintiff testified that he is not under the care of a doctor because he has no means to pay for it but that he is getting Vicodin and Darvocet and something to help him sleep at night from a friend. (R. 184-85.) Plaintiff testified that on a typical day he watches a little television and walks around the yard. (R. 185.) He further testified that he likes to hunt, but that it does not involve much (Id.) Plaintiff reported that he did not know if he could perform a bench assembly job because his hands shake. (Id.)

The ALJ determined that claimant suffers from degenerative spine disease and diabetes mellitus. (R. 20.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (Id.)

The ALJ then found that Plaintiff retained the RFC for essentially a full range of light work. (R. 20.) Specifically, the ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for 6 hours in an 8-hour day; push and pull without limitation; but only occasionally stoop and crouch due to Plaintiff's back pain. (Id.) The ALJ concluded that Plaintiff could not perform his past relevant work as an electrician but that he was nevertheless "not disabled" based on Medical-Vocational Rule 202.18. (R. 21-22.)

## IV. DISCUSSION

Plaintiff argues that the Commissioner failed to carry her burden to show that Plaintiff could perform alternative work in the national economy. Plaintiff raises three issues. First, Plaintiff contends that in light of Plaintiff's nonexertional limitations -- i.e.,

postural limitations and pain -- the ALJ erred by applying the Grids without obtaining vocational expert testimony. Second, Plaintiff argues that the ALJ erred by disregarding Plaintiff's subjective complaints of pain based upon the fact that Plaintiff testified that he enjoyed hunting.  Third, Plaintiff argues that the ALJ failed to fully and fairly develop the record.

      **A.**    **The ALJ Did Not Err By Relying On The Grids**

Because the ALJ found that Plaintiff could not return to his past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[24]  The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony.[25]  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[26]

In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[27]

---

[24] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[25] See id.

[26] See id.

[27] See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

This burden may sometimes be met through exclusive reliance on the "grids."[28] However, exclusive reliance on the "grids" is not appropriate "*either* when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."[29] If either condition exists, the ALJ is required to consult a vocational expert.[30]

The ALJ found that Plaintiff was limited to light work with occasional stooping and crouching. (R. 19.) The ALJ then concluded that Plaintiff retained the RFC for essentially a full range of light work and found that Plaintiff was not disabled based on Rule 202.18 of the Grids. (R. 22.)

Plaintiff contends that it was inappropriate for the ALJ to rely on the grids in light of his non-exertional impairments -- i.e., postural limitations and pain. Turning first to Plaintiff's postural limitations, Social Security Rulings 83-14 and 85-15 provide that stooping and crouching are required only occasionally for light work, and as noted above, the ALJ found that Plaintiff was limited to occasional stooping and crouching.[31] Accordingly, Plaintiff's postural limitations would have only a minimal impact on the occupational base.

---

[28] Foote, 67 F.3d at 1558.

[29] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)

[30] See id.

[31] SSR 83-14 provides in pertinent part that "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally." Doc. 20, Exhibit 1. SSR 85-15 provides that "[i]f a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." Id., Exhibit 2.

With respect to pain, Plaintiff focuses upon the pain arising from his lower back condition. Plaintiff argues that he consistently complained to his medical doctors about lower back pain and that the objective medical evidence, particularly the MRI films, shows that Plaintiff suffers from degenerative spine disease, which could provide a basis for his pain. However, merely because Plaintiff reported pain to his treating physicians and had an impairment that could cause pain does not mean that the pain is causing nonexertional limitations. Indeed, Plaintiff has failed to even suggest how his alleged pain would limit his ability to perform the full range of light work.

Pain is a symptom that may or may not cause functional limitations and it is considered with the other record evidence to determine the Plaintiff's ability to work.[32] Here, the ALJ found that Plaintiff's impairments and resulting symptoms, including pain, limited Plaintiff to "essentially a full range of light work."[33] Based upon a review of the entire record, the ALJ's conclusion is based on substantial evidence.

The ALJ's conclusion is supported by the following evidence. First, none of Plaintiff's treating physicians placed any restrictions or limitations upon Plaintiff's activities and their objective findings support the ALJ's conclusion that Plaintiff could perform a full range of light work. The treating physicians consistently reported normal

---

[32] See e.g., 20 C.F.R. §§404.1528(a), 404.1529(a).

[33] With respect to Plaintiff's back condition, the ALJ found:

> While the undersigned does consider the claimant's degenerative disc disease to be severe, treating and examining physicians have not placed any restrictions or limitations on him. There has been no evidence of impingement, stenosis, or herniation. He has been advised against surgery by medical professionals, and treatment has been conservative. The record consistently shows straight leg raising to have been negative, and all motor and sensory exams were normal. The undersigned feels that limiting the claimant to light work accommodates this impairment.

13

muscle strength, reflexes, sensation, negative straight leg raising, steady gait and only limited range of motion.  (R. 111, 113-15, 125-26, 129-30,131-32.)[34]  Dr. Piazza reviewed Plaintiff's April 2002 MRI and stated that it showed only "very mild degenerative disc and joint disease with a component of congenital stenosis" and "no significant central or lateral recess stenosis or disc protrusion."  (R. 112.)  Dr.Vale reviewed Plaintiff's June 2002 MRI and concluded that it showed minimal lumbosacral spondylosis, no nerve root compression, and no spinal stenosis.  (R. 125.)  A bone scan revealed no abnormalities that would account for Plaintiff's low back pain. (R. 110, 122.)  In addition, the records show that Plaintiff did not receive treatment for any complaints after September 9, 2002.  Moreover, as discussed below, the ALJ found that Plaintiff's testimony regarding his limitations was not "entirely credible" and that finding is supported by substantial record evidence.

Accordingly, the ALJ's conclusion that Plaintiff could perform a full range of light work  is supported by substantial evidence.  As such, the ALJ did not err by relying on Rule 202.18 of the Grids without obtaining vocational expert testimony.

### B.    The ALJ's Credibility Finding Is Supported By Substantial Evidence

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[35]  While an adequate credibility

---

[34] Dr. Pipalia who only saw Plaintiff on one occasion noted that Plaintiff's sensation was decreased peripherally.  (R. 135.)

[35] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[36] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[37] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[38] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[39] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[40]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[41] assessment to Plaintiff's subjective complaints by noting the Plaintiff's degenerative spine disease and diabetes mellitus. While the ALJ did not cite the exact language of the standard, he did state that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as

---

[36] Foote at 1562-1563.

[37] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[38] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[39] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[40] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[41] Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). .

consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. Sections 404.1529 and 416.927 and Social Security Ruling 96-7p." (R. 27.) This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard. Moreover, the ALJ cited 20 C.F.R. §§ 404.1529, which contains the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[42]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing an underlying medical condition, degenerative spine disease, that could be expected to give rise to pain. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's testimony "not entirely credible." (R. 19.) In support of this finding, the ALJ noted that Plaintiff enjoyed hunting, which according to the ALJ can be "quite demanding physically" and requires steady hands, dexterity and walking more than two blocks. (Id.) Plaintiff argues that the ALJ erred by making unsupported assumptions about the physical demands of hunting. However, the physical requirements identified by the ALJ are both reasonable and based upon common sense. Moreover, hunting was not the ALJ's only basis for discrediting Plaintiff's testimony. Indeed, the ALJ also correctly noted that Plaintiff's treating physicians did not place any restrictions or limitations on Plaintiff's activities. Moreover, as discussed above, the objective medical evidence supports the ALJ's conclusion that Plaintiff's impairments were not as severe

---

[42] See Wilson, 284 F.3d at 1226.

as he suggested.  Accordingly, there is substantial evidence to support the ALJ's decision to discredit Plaintiff's testimony regarding limitations.

### C.     The ALJ Was Not Required To Further Develop The Record

It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[43]  This obligation exists whether or not a claimant is represented by counsel.[44]  As a hearing is non-adversarial in nature,[45] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[46]  The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.[47]

Here, Plaintiff argues that the ALJ improperly inferred that Plaintiff does not have any work-related restrictions based upon the fact that none of Plaintiff's treating doctors noted any restrictions in their records.  Plaintiff contends that if the ALJ did not have enough information about Plaintiff's restrictions, he should have requested additional information from Plaintiff's treating doctors or he should have obtained an examination by a state physician.

The ALJ in the instant case analyzed a fully developed, unambiguous record before concluding that Plaintiff was able to perform a full range of light work.  The

---

[43] See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[44] Zaldivar, 81 F. Supp 2d at 1359.

[45] Id.

[46] See Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[47] See Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984.)

records from Dr. Piazza, Dr. Vale and Dr. Pipalia, relied upon by the ALJ, are more than sufficient for the ALJ to assess Plaintiff's impairments. That Plaintiff's medical records span a relatively short period of time does not render the record evidence ambiguous or incomplete. Indeed, the fact that Plaintiff did not obtain medical treatment after September 9, 2002 offers further support for the ALJ's conclusion that Plaintiff's condition was not as severe as he suggested.

Accordingly, because the objective medical findings by Dr. Piazza, Dr. Vale and Dr. Pipalia were wholly consistent with a lack of work-related restrictions or limitations, the ALJ did not err in failing to request additional information from those doctors. Moreover, because the record contained sufficient evidence for the ALJ to make an informed decision, he was not required to obtain a consultative examination.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, on June 29, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
  The Honorable Wm. Terrell Hodges
  Senior United States District Judge

  Counsel of Record

18